# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

DONALD R. PEVIA,　　　　　　　　*

Plaintiff　　　　　　　　　　　　　*

v.　　　　　　　　　　　　　　　　*　　　Civil Action No. ELH-19-0327

LARRY HOGAN, *et al*.,　　　　　　*

Defendants　　　　　　　　　　　*
　　　　　　　　　　　　　　　　***

# MEMORANDUM

On March 3, 2020, I entered a Memorandum and Order granting in part and denying in part Defendants' Motion for Summary Judgment. ECF 16; ECF 17. In doing so, plaintiff's due process and equal protection claims were denied. Plaintiff has filed a timely Motion to Alter or Amend that portion of the Memorandum and Order. ECF 24.

In rejecting plaintiff's claims, I found, in pertinent part, ECF 16 at 21-25:

> The Fourteenth Amendment's Due Process Clause guarantees that no state shall "deprive any person of ... liberty ... without due process of law." To bring a due process claim, a plaintiff must first show the existence of a protected property or liberty interest. *Mathews v Eldridge*, 424 U.S. 319, 332 (1976); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). A plaintiff may bring a civil action to redress due process violations under 42 U.S.C. § 1983.
>
> In the prison context there are two different types of constitutionally protected liberty interests that may be created by government action. The first is created when there is a state created entitlement to an early release from incarceration. *Board of Pardons v. Allen*, 482 U.S. 369, 381 (1987) (state created liberty interest in parole); *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) (state created liberty interest in good conduct credits). The second type of liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see Wilkinson v. Austin*, 545 U.S. 209 (2005). As the Fourth Circuit has noted, "[t]he Supreme Court has long recognized that a prisoner may have a state-created liberty interest in certain prison confinement conditions…." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). Whether confinement conditions are atypical and substantially harsh "in relation to the ordinary incidents of prison life" is a "necessarily . . . fact specific" comparative exercise. *Beverati v. Smith*, 120 F.3d

500, 502-3 (4th Cir. 1997); *accord Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) ("There is no single standard for determining whether a prison hardship is atypical and significant, and the condition or combination of conditions or factors . . . requires case by case, fact by fact consideration.") (alteration in original) (internal quotation marks omitted).

The case of *Wilkinson*, 545 U.S. 209, involved transfer to and housing in the isolated confinement of a "supermax" facility. *Id*. at 213. It also involved solitary confinement-- isolated human contact for potentially "indefinite" periods. *Id*. at 224. The Court recognized that the severe deprivations detailed in that case exist in most solitary confinement facilities, and looked at the presence of added factors to find "an atypical and significant hardship" on inmates such that they had a liberty interest in avoiding it. *Id*. at 224. These factors were (1) the potentially indefinite length of detention, limited only by the length of the underlying sentence, and (2) being rendered ineligible for parole due to confinement. *Id*. The Supreme Court said: "While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." *Id*. Therefore, such prisoners have a protected liberty interest in avoiding placement in such confinement. *Id*.

The Fourth Circuit has explained: "*Wilkinson* does not hold that harsh or atypical prison conditions in and of themselves provide the basis of a liberty interest giving rise to Due Process protection." *Prieto*, 780 F.3d at 250. Rather, there must exist an interest in avoiding "*erroneous placement* [in the challenged confinement] under the state's classification regulations combined with . . . harsh and atypical conditions" for Due Process protections to apply. *Id*. (emphasis in original) (citing *Wilkinson*, 545 U.S. at 224-25).

"[T]he general population is the baseline for atypicality for inmates who are sentenced to confinement in the general prison population and have been transferred to security detention while serving their sentence." *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015). Where conditions in segregated confinement are "similar in most respects to those experienced by inmates in the general population," no liberty interest exists in avoiding that segregation assignment. *Bevarati*, 120 F.3d at 503. But, for an inmate sentenced to death and on death row, as in *Prieto,* 780 F.3d 245, "using the general population to gauge the ordinary incidents of prison life . . . was improper." *Incumaa*, 791 F.3d at 528 (citing *Prieto*, 780 F.3d at 252-54). Although the nature of a prisoner's conviction and the length of his sentence do not give rise to differing liberty interests, "'state law mandates [regarding] the confinement conditions to be imposed on offenders convicted of a certain crime and receiving a certain sentence . . . are, by definition, the ordinary incidents of prison life for such offenders.'" *Id*. (quoting *Prieto*, 780 F.3d at 254) (alterations in *Incumaa*).

2

As a prisoner, plaintiff is not entitled to the process due to persons who remain at liberty. "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." *Wilkinson*, 545 U.S. at 225.

Plaintiff has not sufficiently identified which conditions of his confinement on HU 2 were different from those assigned to other housing units. Based on the limited information provided by plaintiff, he did not experience conditions that were atypical. Therefore, he cannot sustain a claim for a due process violation.

Moreover, there is no constitutional right for an inmate prisoner to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. Nor does a prisoner have a right to participate in a particular program. *See Sandin*, 515 U.S. at 484 (concluding that protected liberty interests are generally limited to freedom from restraint, which imposes atypical and significant hardship on inmate in relation to ordinary incidents of prison life); *McKune v. Lile*, 536 U.S. 24, 26 (2002) (stating that the "decision where to house inmates is at the core of prison administrators' expertise"); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (holding that the Constitution's Due Process Clause does not "protect a duly convicted prisoner against transfer from one institution to another within the state prison system"); *see also Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Rizzo v. Dawson*, 778 F. 2d 527, 530 (9th Cir. 1985).

Matters of security classification are reserved to the sole discretion of prison officials. *See Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994). In analyzing conditions of confinement, the court must consider a correctional system's need to maintain order, discipline, and control. *See Sandin*, 515 U.S. at 483-84 (stating that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment"); *see also Wolff*, 418 U.S. at 558–62.

In sum, this [C]ourt is unaware of any Maryland law or regulation conferring a protected liberty interest on DOC inmates that has been abridged here. Absent a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated, because "[p]rocess is not an end in itself." *Olim*, 461 U.S. at 250. Reviewing plaintiff's allegations in the light most favorable to him, there are no genuine issues of disputed material fact and defendants are entitled to summary judgment in their favor as a matter of law.

Also relevant to Pevia's claim regarding conditions on HU 2, the Court takes notice of the fact that in 2014 he filed a complaint alleging that the levels program implemented in 2013 at NBCI violated his rights because his access to showers, recreation, out of cell activities, and programming were severely

restricted. That "levels" program was never fully adopted at NBCI. Ultimately, in *Pevia v. Shearin*, ELH-14-2928, I found that plaintiff's rights had not been violated by the conditions experienced by him, and I granted defendants' motion for summary judgment. *Id.*, ECF 22.

Plaintiff has also filed several other suits, challenging other aspects of the privileges extended to HU 2 inmates. Each of his complaints has been unsuccessful. *See, e.g., Pevia v. Nines*, Civil Action ELH-17-10, ECF 33 (unable to order paintbrushes due to security classification and assignment to HU 2); *Pevia v. Commissioner of Correction, et al*, Civil Action ELH-17-273, ECF 31 (denial of access to legal materials due to being housed in HU 2); *Pevia v. Bishop*, Civil Action ELH-17-2796, ECF 24 (denial of access to religious programming due to being housed in HU 2); *Pevia v. Corcoran, et al.*, Civil Action ELH-18-2395, ECF 17 (denial of access to educational programming due to being housed in HU 2).

As to the claim here concerning denial of access to GED programming, plaintiff raised the exact same claim in *Pevia v. Corcoran, et al.*, Civil Action No. ELH-18-2395. In that case, he sued defendants Deyana Corcoran, Frank Bishop, Vaughn Whiteman, Amy Conner, and Governor Larry Hogan.

The doctrine of *res judicata* precludes the assertion of a claim after a judgment on the merits in a prior suit by parties on the same cause of action. *See Meekins v. United Transp. Union*, 946 F. 2d 1054, 1057 (4th Cir. 1991). In addition, "'[n]ot only does *res judicata* bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Id*. (quoting *Peugeot Motors of America, Inc. v. Eastern Auto Distributors, Inc.*, 892 F. 2d 355, 359 (4th Cir. 1989)).

As to plaintiff's equal protection claim, I found that he failed to put forth any evidence of a discriminatory intent, nor was there any evidence that defendants intentionally or purposefully acted to discriminate against plaintiff. *Id.* at 36.

In his Motion to Alter or Amend, plaintiff reiterates his claim that his being housed on HU 2 resulted in his being treated differently from other similarly situated inmates. In other words, he assets that his claim was not solely about his access to educational programming. ECF 24-2 at 1. Plaintiff reiterates his claims that his assignment to HU 2 resulted in his having fewer privileges than inmates housed on HU 3, despite all inmates being the same security level. *Id*. Additionally,

4

he details the differences in programming and out-of-cell recreation he claims experienced by those assigned to HU 2, as compared to HU 3 and 4. *Id*. at 3. He also claims that the disparate treatment of HU 2 inmates is an additional sanction imposed on those moved to HU 2 from disciplinary segregation. *Id*.

A motion to alter or amend is governed by Fed. R. Civ. P. 59(e) and "need not be granted unless the district court finds that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice." *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 411 (4th Cir. 2010). "Mere disagreement does not support a Rule 59(e) motion." *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993). The rule permits a district court to correct its own errors, "sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995).

Rule 59(e) motions may not be used, however, to raise arguments that could have been raised prior to the issuance of the judgment, nor may such a motion be used to argue a case under a novel legal theory that the party had the ability to address in the first instance. *See Russell*, 51 F.3d at 749; *Concordia College Corp. v. W.R. Grace & Co.*, 999 F.2d 326, 330 (8th Cir. 1993); *FDIC v. World Univ., Inc.*, 978 F.2d 10, 16 (1st Cir. 1992); *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990); *see also In re: Reese*, 91 F.3d 37, 39 (7th Cir. 1996) ("A motion under Rule 59(e) is not authorized 'to enable a party to complete presenting his case after the court has ruled against him.'") (quoting *Frietsch v. Refco, Inc*., 56 F.3d 825, 828 (7th Cir. 1995)); 11 Wright et al., Federal Practice and Procedure § 2810.1, at 127-28 (2d ed. 1995) ("The Rule 59(e) motion may not be used to relitigate old matters, or to raise arguments or present evidence that could have

been raised prior to the entry of judgment."). Similarly, if a party relies on newly discovered evidence in its Rule 59(e) motion, the party "must produce a 'legitimate justification for not presenting' the evidence during the earlier proceeding." *Small v. Hunt*, 98 F.3d 789, 798 (4th Cir. 1996) (quoting *RGI, Inc. v. Unified Indus., Inc*., 963 F.2d 658, 662 (4th Cir. 1992)). In general "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citing Wright et al., Federal Practice and Procedure § 2810.1, at 124 (2d ed. 1995)).

Plaintiff has offered no justiciable reason to alter the Court's previous findings. His motion is clearly nothing more than an expression of his disagreement with the Court's ruling. Therefore, I shall deny the motion.

I note that on March 13, 2020, I approved the appointment of counsel for plaintiff as to the viable claims in his suit concerning the denial of access to a Native America Faith Group sweat lodge. ECF 20. However, due to the current health crisis gripping Maryland, the nation, and the world, a lawyer has not yet been appointed.

An Order follows.

Date: March 23, 2020                                /s/
                                                    Ellen L. Hollander
                                                    United States District Judge