IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DONALD R. PEVIA,** | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-19-327 |
| **ROBERT L. GREEN,** *et al.*, | * | |
| Defendants. | * | |

**MEMORANDUM OPINION**

When maximum-security state prisoner Donald R. Pevia, a member of the Native American Faith Group ("NAFG"), was incarcerated at maximum-security state prison North Branch Correctional Institution ("NBCI"), he asked prison officials if he could participate in an NAFG sweat lodge ceremony. His request was denied because of a statewide policy, imposed by the Maryland Department of Public Safety and Correctional Services ("DPSCS"), that categorically prohibited maximum-security inmates like him from participating in sweat lodge ceremonies. In this ensuing lawsuit, he claimed that the prison violated his First Amendment free exercise rights and that the policy violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq*.

Since filing suit in February 2019, Pevia has been transferred from NBCI to Jessup Correctional Institution ("JCI"), and on February 21, 2022, DPSCS rescinded the challenged policy. ECF 83-3; ECF 85-1, at 1. The new policy states that prison officials "may prohibit on a case by case basis, an offender's participation in a congregate service if the offender demonstrates or is known to demonstrate dangerous, violent, or other characteristics that pose a serious threat to life, property, self, staff, other offenders, or facility security." ECF 83-3, at 3.

The only remaining claim is Pevia's RLUIPA claim against Robert L. Green, Secretary of DPSCS, and Annie D. Harvey, the Commissioner of Corrections. Pending before the Court is Pevia's motion for summary judgment on that claim. ECF 94. The parties fully briefed the motion. ECF 94-1, 98, 99, 100.

The defendants argue the Court should not reach the merits of the summary judgment motion. ECF 99, at 14–18. They argue Pevia's RLUIPA claim is moot because the DCSPS rescinded the challenged policy and replaced it with a new policy that does not categorically ban maximum security inmates from participating in sweat lodges. The Court previously concluded, after extensive briefing and argument, *see* ECF 83, 84, 85, 89, 90, that the defendants failed to prove the claim was moot, ECF 91. The arguments they advance in their opposition brief were made or could have made previously. To the extent they seek reconsideration of the prior ruling, they have not satisfied the requirements. They do not identify any intervening change in the law, new evidence, or a manifest injustice that would occur if the Court did not reconsider its ruling. *See* Fed. R. Civ. P. 54(b); *Saint Annes Dev. Co. v. Trabich*, 443 F. App'x 829, 832 (4th Cir. 2011) (district court has discretion to reconsider interlocutory rulings); *Am. Canoe Assoc. v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003) ("[A] district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted."). The RLUIPA claim is not moot, and the Court will consider the merits of Pevia's summary judgment motion.

Because the defendants have not met their burden of showing that the policy is the least restrictive means of furthering a compelling state interest, Pevia's motion for summary judgment is granted in part and denied in part. The Court will grant Pevia's request to issue a declaratory judgment that the DPSCS's now-rescinded statewide, categorical ban on maximum-security

inmates participating in sweat lodge ceremonies violates RLUIPA.[1]  But the Court denies Pevia's request for injunctive relief.

I.      **Standard of Review**

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To meet their burden, the moving party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of their position.  Fed. R. Civ. P. 56(c)(1)(A).  Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The non-moving party must identify more than a "scintilla of evidence" in support of his position to defeat the motion for summary judgment.  *Anderson*, 477 U.S. at 251.  The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249).  However, if "a party fails to establish the existence of an element essential to that party's case" or "'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,'" then summary judgment is proper.  *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the

---

[1] A more fulsome discussion of the procedural background and facts appears in the Court's March 31, 2022 memorandum opinion, ECF 91, on the defendants' motion for summary judgment.  The Court granted them summary judgment on Pevia's First Amendment claim on qualified immunity grounds and denied summary judgment on the RLUIPA claim.  ECF 91.

3

nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

**II.     Discussion**

RLUIPA forbids the government from "impos[ing] a substantial burden" on a prisoner's religious exercise rights unless the government shows the burden advances a compelling governmental interest and "is the least restrictive means of furthering that . . . interest." 42 U.S.C. § 2000cc-1(a); *see Madison v. Riter*, 355 F.3d 310, 321 (4th Cir. 2003).  Under RLUIPA, prisoners may challenge laws or government policies through facial challenges or as applied to them.  *See Cutter v. Wilkinson*, 544 U.S. 709, 725 (2005); *see also, e.g.*, *Lovelace v. Lee*, 472 F.3d 174, 193 (4th Cir. 2006).  A facial challenge is "an attack on a statute [or policy] itself as opposed to a particular application." *City of Los Angeles v. Patel*, 576 U.S. 409, 415 (2015).  Pevia brings a facial challenge to the statewide policy that denied all maximum-security inmates access to a sweat lodge. *See* ECF 91, at 18; ECF 1, at 5.

RLUIPA "claims proceed in two stages." *Wright v. Lassiter*, 921 F.3d 413, 418 (4th Cir. 2019).  At stage one, "the plaintiff must show that the prison's policies imposed a substantial burden on his exercise of sincerely held religious beliefs." *Id.*  There is no dispute that Pevia holds a sincere religious belief and that the defendants' policy denying him access to attend an NAFG sweat lodge ceremony "exacts a substantial burden on religious exercise" of that belief.  *See Pevia v. Hogan*, 443 F. Supp. 3d 612, 638 (D. Md. 2020).  Therefore, the Court proceeds to stage two.

At stage two, the Court "ask[s] whether the prison's policies are justified despite the burden they impose." *Wright*, 921 F.3d at 418.  The burden is on the government "to show that its policies satisfy strict scrutiny: that is, the policies must represent the least restrictive means of furthering a compelling governmental interest."  *Id.* (citing 42 U.S.C. § 2000cc-1(a)).  A compelling

4

government interest is one "of the highest order." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993) (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972)). The compelling interest standard "is not 'water[ed] . . . down' but 'really means what it says.'" *Id.* (quoting *Emp. Div., Dep't of Hum. Res. v. Smith*, 494 U.S. 972, 888 (1990)). The least restrictive means standard "is 'exceptionally demanding' and requires the government to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y].'" *Holt v. Hobbs*, 574 U.S. 352, 353 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 728 (2014)). Courts should give "due deference to the experience and expertise of prison and jail administrators." *Lovelace*, 472 F.3d at 189–90 (quoting *Cutter*, 544 U.S. at 723). But "a court should not rubber stamp or mechanically accept the judgments of prison administrators." *Id.* at 190.

The defendants argue that "the prior policy ban of maximum-security inmates from sweat lodge ceremonies was then the least restrictive means to promote DPSCS's compelling interest in safety and security for inmates, volunteers, and staff." ECF 99, at 4. They insist that "at the time the challenged policy was in place," no less restrictive means would ensure prison safety and security, given "the dangers inherent in sweat lodge ceremonies and the fact that maximum security inmates present a heightened security risk." *Id.* at 4.

The Court will assume, without deciding, that the defendants adopted the categorical ban on maximum security prisoners participating in sweat lodges to advance a compelling interest in prison security. Even on that assumption, the Court holds that the policy violates RLUIPA because the defendants have not established that the policy is the least restrictive means of advancing that interest. The policy is not the least restrictive means for at least three reasons, any one of which would be independently sufficient to compel a ruling for Pevia.

5

**A. The defendants' current case-by-case policy is a less restrictive alternative**

First, while this case was pending, the defendants replaced the total prohibition that Pevia challenges with a policy that permits sweat lodges on a case-by-case basis. ECF 83-3. The defendants acknowledge that the new policy forgoes "the added security of a categorical ban" and is, for that reason, "less restrictive." ECF 99, at 13. Since the defendants bear the burden of establishing that the categorical ban is the least restrictive means of achieving a compelling government interest, *Wright*, 921 F.3d at 418, they bear the burden of establishing that they could not have adopted originally the less restrictive means they have adopted now. But they do not establish that. Instead, they merely assert that their security concerns "warranted a blanket ban" and that "while the policy was in place, it was the least restrictive means." ECF 99, at 14. Those assertions are no substitutes for evidence. The defendants also argue that "as a matter of basic logic, the fact that the Change Notice removing the ban is appropriate *now* does not mean that the earlier policy was inappropriate during the timeframe in which it was in place." *Id.* at 14. True enough. But "as a matter of basic logic," the fact that the categorical ban *might* have been necessary then does not entail that it *was* necessary then. The defendants have to prove that the categorical ban was actually necessary. *See Wright*, 921 F.3d at 418. And to do that, they need to point to evidence that they could not have adopted the case-by-case policy then—evidence that something has changed. *Cf. Ramirez v. Collier*, 595 U.S. 411, 429 (2022) (refusing to "simply defer" to state's determination that less restrictive policy was infeasible because state previously had less restrictive policy). But they do not point to any such evidence.

The defendants respond that two cases, *Chance v. Texas Department of Criminal Justice* ("TDCJ"), 730 F.3d 404 (5th Cir. 2013), and *Richardson v. Clarke*, No. 3:18CV23-HEH, 2021 WL 851881 (E.D. Va. Mar. 5, 2021), provide persuasive authority for their position. Neither does.

In *Chance*, the Fifth Circuit considered the effect of previous TDCJ policies on the analysis of whether current policies violated RLUIPA. 730 F.3d at 407–11. An NAFG inmate alleged that four TDCJ policies violated RLUIPA because they denied him "(1) personal participation in a pipe-smoking ceremony, (2) participation in a minimum number of various ceremonies, (3) indoor smoke-wafting, and (4) personal possession of a lock of a deceased relative's hair." *Id.* at 407. The Fifth Circuit concluded that "the prison policies associated with Chance's first three complaints [were] the least restrictive means of furthering TDCJ's compelling interests," even though TDCJ previously had policies that accommodated these tenets of his faith. *Id.* at 407–09. The court reasoned that relevant circumstances had changed: The health service division had issued a "detailed opinion on the health implications of using a communal pipe," the number of volunteers and chaplains had dwindled, and the fire alarm system had changed. *Id.* at 408–09. As a result of these changes in circumstances, the new policies were the least restrictive means despite the earlier, more accommodating policies. The court emphasized that "the wording of the RLUIPA statute suggests a fact-specific inquiry that takes into account the special circumstances of the individual prisoner and prison." *Id.* at 411. As for the lock of hair, the court observed that the deference owed "to TDCJ's expertise in prison administration and security . . . does have its limits." *Id.* at 419. The court noted that it "appear[ed] that there [were] a number of less restrictive alternatives to an outright ban, including restricting the lock of hair to the cell, washing it, inspecting it, or restricting its size." *Id.* Therefore, it denied TDCJ's summary judgment motion on that claim.

In *Richardson*, the plaintiff brought § 1983 and RLUIPA claims challenging a prison policy that required inmates to remove religious head coverings "in certain areas of the prisons (such as the dining hall, the visiting room, the administrative building, and designated program locations)."

7

2021 WL 851881, at *7. After the plaintiff filed suit, the prison revised the policy to allow "inmates [to] wear religious and state issued head coverings anywhere inside the facility, but [required them to] remove the head covering at the request of the security staff." *Id.* In the court's RLUIPA analysis, which the Fourth Circuit subsequently vacated, *see Richardson v. Clarke*, 52 F.4th 614, 622–25 (4th Cir. 2022), the court applied the standard that applies to § 1983 claims, considering whether the prison policy at issue was "reasonably related to legitimate penological interests, and . . . not an exaggerated response to such objectives," 2021 WL 851881, at *11 (quoting *Beard v. Banks*, 548 U.S. 521, 528 (2006)). The analysis included a determination of whether "there was an 'absence of ready alternatives' to the regulation in question." *Id.* The court found that this factor did not "as starkly favor the Defendants" as other factors, "[g]iven the Defendants' recent removal of the policy." *Id.* But after considering "the facts of the case in the context of contemporaneous events," particularly that "[o]ver the last year everyone has been encouraged to wear a face mask," the court found that "it was reasonable for the [Virginia Department of Corrections] to conclude that limiting the use of head coverings was no longer necessary to prevent inmates from obscuring their identity." *Id.*

Here, in contrast to *Chance* and *Richardson*, the defendants have not shown that any circumstances have changed such that the current less-restrictive policy was infeasible at the time the prior policy was in effect. They simply advance the unsupported assertion that the DPSCS policy was "*then* the least restrictive means"—the least restrictive means "*at the time* the challenged policy was in place." ECF 99, at 4, 5 (emphasis added). While they are entitled to some deference, accepting this unsupported argument would require "a degree of deference that is tantamount to unquestioning acceptance." *Holt*, 574 U.S. at 364.

Moreover, because the defendants dispute whether an effective, less restrictive policy was feasible when the challenged policy was in effect, the Court may consider the current, less restrictive DPSCS policy as evidence that a less restrictive means was feasible, or at least may have been feasible.  *See* Fed. R. Evid. 407 (evidence of subsequent remedial measures "that would have made an earlier injury or harm less likely to occur, . . . is not admissible to prove . . . culpable conduct" but it is admissible to prove "--if disputed-- . . . the feasibility of precautionary measures"); *see, e.g.*, *Boeing Airplane Co. v. Brown*, 291 F.2d 310, 315 (9th Cir. 1961) (changes made to product design after accident were admissible for limited purpose of "show[ing] that it would have been feasible and practicable to incorporate those features in the design at the time the [product] in question was built" when manufacturer would not admit "the feasibility of such changes to correct the specific defects in issue").  Even one of the cases the defendants cite found that the fact that a facility had ended a restrictive policy spoke against the defendants' claim that they had had no "ready alternatives" to the policy at the time they adopted it.  *Richardson*, 2021 WL 851881, at *11.

In light of their current, less restrictive policy, the defendants have not shown that they had no "other means of achieving [their] desired goal without imposing a substantial burden on the exercise of religion . . . ."  *See Holt*, 574 U.S. at 353.

### B.  WCI's prior sweat lodge ceremonies suggest a less restrictive alternative

The record reveals another less restrictive alternative.  In 2017, while Pevia was incarcerated at another maximum-security facility, WCI, he participated in a sweat lodge ceremony—even though he was designated a maximum-security II inmate, and even though the statewide policy categorically banning maximum-security inmates from sweat lodge ceremonies was then in place.  ECF 61-8, ¶ 6; ECF 99-2, ¶ 5; ECF 94-2, ¶¶ 3, 8–9; ECF 14-1 (Attachment A

– OPS.110.0013) (facility security level designation chart indicating that, as of at least January 2015, WCI was designated a maximum level I security facility); ECF 85-1, ¶ 3; *see also* ECF 10-5, at 1; ECF 56-4, ¶ 9. About nine other inmates participated as well. ECF 94-2, ¶ 9. Pevia attests that this sweat lodge ceremony took place without incident. *Id.* ¶ 10. What's more, the evidence indicates that WCI facilitated sweat lodges for years, from 2011 to 2019, *see* ECF 61-14; ECF 99-3 at 11. The defendants dispute the legal implications of these facts, but they do not dispute the facts themselves. *See* ECF 99, at 8–12.

The fact that a maximum-security facility regularly permitted inmates to participate in sweat lodge ceremonies—including at least one maximum-security II inmate, Pevia himself—indicates that the statewide, categorical ban on maximum-security inmates participating in sweat lodge ceremonies was not the least restrictive means of advancing the government's interest in secure prisons. At the very least, the state could have adopted a more context-sensitive policy that permitted a maximum-security inmate to participate in sweat lodge ceremonies if his facility could host them safely or if he could be transported safely to one that could.

In earlier briefing, the defendants warned against generalizing from WCI's practices. They suggested that even if WCI could host a sweat lodge safely, NBCI could not. ECF 56-1, 3–5. NBCI, they contended, "is a unique DPSCS prison" whose "design and layout" render it unable to "provide a sweat lodge" without compromising security. *Id.* at 3–4. But even if that is true, it is irrelevant at this stage of the litigation. Pevia's remaining claim is that the statewide, categorical ban on maximum-security inmates participating in sweat lodge ceremonies violates RLUIPA. ECF 94-1, at 9. He does not argue that the WCI ceremonies show that NBCI must copy WCI's approach. Rather, he argues that the WCI ceremonies "demonstrate[] that DPSCS's outright ban on these inmates' participation in sweat lodge ceremonies was not the least restrictive means of

furthering Defendants' interests." *Id.* at 14.  And they do demonstrate that, for they show that in the very period of time that the state asserts only a statewide, categorical ban would have sufficed, a less restrictive practice occurred.

The defendants argue that *Fowler v. Crawford*, 534 F.3d 931 (8th Cir. 2008), counsels against this conclusion.  As they accurately point out, the *Fowler* Court rejected an inmate's argument that his prison's complete ban on sweat lodges could not be the least restrictive means of furthering its interest in safety and security because a higher-level security prison offered sweat lodges without any issues.  *Id.* at 942.  However, the case concerned a prison-specific policy, not a state-wide policy.  *Id.*  And the Eighth Circuit emphasized that the inquiry and the conclusion were prison-specific and context-sensitive, because "prison officials may, quite reasonably, exercise their discretion differently based upon different institutional circumstances."  *Id.*  *Fowler* would counsel against this Court holding that simply because WCI permitted a maximum-security prisoner like Pevia to participate in a sweat lodge there, NBCI must permit a maximum-security prisoner to participate in a sweat lodge there.  But that is not this Court's holding.  This Court holds only that a blanket ban on participation is not the least restrictive means available to the state.

Ultimately, the defendants' own language is telling.  They ask the Court to find "that because of the dangers inherent in sweat lodge ceremonies and the fact that maximum security inmates present a heightened security risk, the prior policy ban . . . was then the least restrictive means" of ensuring security.  ECF 99, at 4.  But as "inherent" features of the situation, those risks are no different now than they were then.  And they are no different at WCI than they are at any other facility in the state that houses maximum-security inmates.  Of course, other features might have changed over time or might vary from one facility to another.  A policy sensitive to those

11

differences might be compatible with RLUIPA.  The Court makes no judgment about that.  But the policy before the Court is not sensitive to those differences.  As to that policy, the defendants simply demand the Court's deference, *id.* at 11–12, but they have "failed to provide any explanation to which this court could defer," *Couch v. Jabe*, 679 F.3d 197, 204 (4th Cir. 2012).

### C. The defendants did not consider less restrictive alternatives

Third and finally, the defendants do not even assert, much less prove, that they considered and rejected less restrictive means of ensuring the security of the facility before adopting the policy.  The Fourth Circuit "require[s] that the government . . . acknowledge and give some consideration to less restrictive alternatives." *Couch*, 679 F.3d at 203.  That requirement has two parts.  The defendants must indicate that they considered less burdensome alternative means.  *Id.* And the defendants must explain why they rejected those alternatives.  *Id.*  Here, the defendants have done neither.  None of the declarations indicates that the defendants actually considered, evaluated, and rejected less restrictive alternatives when they devised the challenged policy, let alone explains why the policy they chose was the least restrictive way to meet their goals.  True enough, the defendants refer in their latest brief to "the warranted finding that the challenged policy was the least restrictive means of addressing DPSCS's compelling interest in safety and security when dealing with NAFG sweat lodge ceremonies."  ECF 99, at 10–11.  But they never produce any evidence that they made any such finding at the time, let alone explain it.  This defect alone dooms their argument.  *See Haight v. Thompson*, 763 F.3d 554, 564 (6th Cir. 2014) ("[I]n the absence of evidence demonstrating (as opposed to lawyer arguments speculating) that the prison considered and rejected alternatives more tailored to its security interest, the prison's prohibition cannot withstand this aspect of strict scrutiny.").

Pevia's motion for summary judgment on his RLUIPA claim for declaratory relief is granted against the Secretary of DPSCS and the Commissioner of Correction.

**III.    Conclusion**

Pevia's motion, ECF 94, is granted insofar as he seeks declaratory relief and denied insofar as he seeks injunctive relief. The case will not remain open for Pevia to seek injunctive relief at an unknown time in the future; he may pursue such relief through a separate lawsuit. A separate Order and Declaratory Judgment follows.

Date: September 28, 2023

Deborah L. Boardman
United States District Judge